IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAROL SUE DANIELS-STEPHANO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 14-557-GMS |

## MEMORANDUM

### I.    INTRODUCTION

This action arises from the Social Security Administration's denial of the claim of Carol

Daniels-Stephano ("Stephano") for Disability Insurance Benefits ("DIB") under Title II of the

Social Security Act ("the Act").  42 U.S.C. §§ 401–33.  Stephano brings this Complaint (D.I. 1)

against Carolyn W. Colvin ("Colvin"), Acting Commissioner of Social Security and seeks review

of Colvin's decision to deny benefits.

Stephano filed an application for DIB on June 9, 2011, alleging disability beginning in

January, 2008.  (D.I. 13 at 4.)  Her claim was initially denied on November 2, 2011; her claim was

reconsidered and denied again on February 17, 2012.  (Certified Transcript of Proceedings at 16,

hereafter "Tr.")  Stephano then exercised her rights under 20 C.F.R. 404.929 *et seq.*, and requested

a hearing before an Administrative Law Judge ("ALJ") from the Social Security Administration

Office of Disability Adjudication and Review.  (D.I. 13 at 4.)  ALJ Melvin D. Benitz ("ALJ

Benitz") held a forty-five minute-long video hearing to consider her petition on April 2, 2013.

(D.I. 13 at 4.)  At this hearing, Stephano was represented by counsel.  (Tr. at 91.)  ALJ Benitz

issued a written decision on September 27, 2013, finding that Stephano was not disabled, as defined by the Act, from January 1, 2008 through to her last date insured, December 30, 2008. (Tr. at 16.)  Stephano requested that the Appeals Council review ALJ Benitz's decision and the Appeals Council denied her request on January 28, 2014.  (Tr. at 5-10.)  This denial of her administrative appeal request was the final agency action of the Commissioner.  (Tr. at 5.)

Stephano then sought judicial relief under 42 U.S.C § 405(g) and filed this appeal in the U.S. District Court for the District of Delaware on April 28, 2014.  (D.I. 1.)  She seeks review of the Commissioner's final decision denying her DIB claim.  Stephano does not dispute the ALJ findings related to physical limitations, but does dispute the ALJ findings based on and related to her claims of mental impairment.  (D.I. 13 at 2, n.3.)  Presently before the court are Stephano's motion for summary judgment, (D.I. 12), and the Commissioner's cross-motion for summary judgment.  (D.I. 15.)  Because the court finds that ALJ Benitz's decision meets the substantial evidence test established by 42 U.S.C. § 405(g), the court will grant the Commissioner's cross-motion, deny Stephano's motion, and affirm ALJ Benitz's decision.

## II.   BACKGROUND

Stephano was born on August 19, 1949.  (Tr. at 95.)  Stephano has a high school education and twenty-five years of experience as an administrative assistant or secretary.  (*Id.*)  Stephano has a history of periodic depression; however, she had a long period without significant symptoms until they were triggered, in July, 2008, by a serious medical complication following surgery.  (Tr. at 1153-54); (D.I. 13 at 6.)  This increase in depression and anxiety symptoms prompted her to resume outpatient psychiatric treatment.  (D.I. 13 at 6); (Tr. at 1155, 1716.)  With this outpatient treatment, her condition improved.  (Tr. at 1719-20.)  To support her disability claim, Stephano has alleged the following mental and physical impairments: depression, anxiety, a left knee impairment, osteoarthritis, and hypertensive cardiovascular disease.  (D.I. 16 at 1.)

2

## A. Evidence Presented

To support her claim, Stephano produced medical records and expert opinions related to her alleged disabilities and underlying mental and physical conditions. The court will summarize these records.

Stephano has been periodically under the psychiatric care of Dr. Joseph Bryer, M.D., since July 1995 for recurrent major depression. (Tr. at 1715.) From December, 2003 through July, 2008, Stephano was treated by another physician for this condition. (*Id.* at 1716.) On July 31, 2008, she returned to Dr. Bryer exhibiting anxiety and complaining of rapid mood swings and recurrent anxiety triggered by her recently ended medical hospitalization. (*Id.* at 1716.) Dr. Bryer diagnosed a recurrence of a moderately severe, major depression and panic disorder. *Id.* To treat this recurrence, Dr. Bryer modified her medication and began a series of initially closely spaced, then monthly follow-up visits to asses her progress. (Tr. at 1718-43.) Beginning with her first follow-up evaluation on August 11, 2008, Stephano reported "definite and distinct improvement in all of her depressive symptoms." (Tr. at 1719.) At her next visit on September 2, 2008, Stephano reported that she felt "quite well in terms of her mood and level of anxiety." (Tr. at 1720.) Dr. Bryer noted in his mental status examination that day that Stephano "demonstrate[ed] no appearance of anxiety" and "admitted to only mild anxiety." (*Id.*) The record indicates that her next visit and evaluation by Dr. Bryer was on March 19, 2009. (*Id.* at 1721.)

At the March 19, 2009 visit, Stephano reported a return of significant symptoms that were severely affecting her activities of daily living and leading to feelings of hopelessness. (*Id.*) Dr. Bryer adjusted her medications and by June 8, 2009, Stephano demonstrated material improvement. (Tr. at 1723.) By October, 2009, her trajectory of improvement had ended and significant symptoms had returned. (*Id.* at 1725.) Dr. Bryer adjusted her medications in

3

response to this reversal. (*Id.* at 1725-26.)  When Stephano filled her new prescriptions at a retail pharmacy several days later, the pharmacist was so concerned about Stephano's mental state and apparent confusion, that the pharmacist telephoned Dr. Bryer with her concerns. (*Id.*)  Following this phone call, Dr. Bryer arranged for Stephano to be immediately hospitalized for a thorough medical and psychiatric assessment. (*Id.*)  From her discharge on October 21, 2009 until her hospital re-admission on December 29, 2009, the record shows that Stephano continued to suffer from life-disrupting anxiety and moderate depression with no objective indication of improvement. (Tr. at 1728-32.)

Stephano was treated for eight days as an inpatient for a recurrence of major depression, then discharged to a day treatment program that lasted for approximately two weeks. (Tr. at 1733, 1750-51, 1858-1860.)  Dr. Bryer met with her roughly monthly from February 15, 2010 to October 6, 2010. (Tr. at 1740.)  During this time, Stephano's symptoms were generally stable, but she still suffered from low mood and moderate anxiety. (*Id.*)  Due to financial difficulties, Stephano did not complete further follow-up visits until April 25, 2011, where she reported lingering symptoms and reported that she had not returned to normal, but also "admit[ed] that her level of anxiety and her overall mood are substantially improved." (*Id.* at 1742.)

In addition to the psychiatric care summarized above, Stephano suffered from a series of medical issues. Those conditions directly relevant to this matter began in May 2008. (Tr. at 21.)  Stephano suffered a series of painful complications following her May 28, 2008 surgery resulting in multiple short hospitalizations and treatment for these complications. (*Id.*)  These complications occurred throughout June, July, and August 2008. (*Id.*)  Because Stephano disputes neither ALJ Benitz's assessment of these medical complications, nor his conclusions

related to physical limitations, the details of these medical conditions are omitted.  (Tr. 21-23) (summarizing Stephano's medical condition and treatment).

### B. Hearing Testimony

1. Stephano's Testimony

At the August 27, 2013 hearing before ALJ Benitz, Stephano testified about her past work history and the impact that her recurrent depression and anxiety have had on her ability to work and generally engage in the activities of daily living.  (Tr. 95-111).  She testified that she last worked in 2005.[1]  (Tr. at 95.)  When she was last employed, Stephano worked part-time as a secretary.  (Tr. at 95.)  During the roughly twenty-five years before 2005, she was generally employed full-time, initially as a secretary and later as an executive secretary.  (Tr. at 95, 243.)

Under direct examination by her attorney, Stephano reported that she had been treated for depression beginning in 1992.  (Tr. at 96.)  Stephano further reported that she was able to work full-time following this diagnosis, despite her on-going depression and treatment by her family physician.  (Id.)  She stated that the post-surgical complications in June 2008 exacerbated her depression and anxiety, leading her to re-establish treatment with Dr. Bryer.[2]  (Id.)  Because of the uncertain course of her medical condition, in particular the unexpected complications, she stated that her mood dramatically worsened: ". . . everything is very dark . . . you feel like you're going to die."  (Tr. at 97.)  She also reported anxiety attacks, some lasting up to thirty minutes. (Tr. at 97, 100.)

---

[1] There is no evidence in the record that Stephano worked at any time during the January 1, 2008 through December 30, 2008 date of last-insured under the Act. (Tr. at 95; Tr. at 18.)

[2] Throughout the August 27, 2013 administrative hearing transcript, Dr. Bryer is referred to as "Brier." (Tr. 91-121.) Dr. Bryer is a diplomate of the American Board of Psychiatry and Neurology with a further sub-specialization in geriatric psychiatry. (Tr. at 1721.)

5

During the exacerbation of her recurrent depression from June to August 2008, Stephano reported: sleep disturbances (Tr. at 100); difficulty completing the basic activities of daily living (Tr. at 101); memory difficulties (Tr. at 100-101); and a decrease in socialization. (Tr. at 106).

2. The Vocational Expert's Testimony

Vanessa Ennis Harris,[3] a vocational expert ("VE"), offered testimony during the same August 27, 2013 administrative hearing where Stephano testified. (Tr. at 91, 111.) Stephano's attorney also examined the VE. (*Id.* at 116-120.) The VE summarized Stephano's occupational background, skills, and limitations. (*Id.* at 111-112.) The VE also gave her opinion about the potential number and availability of jobs in the national economy that a person with Stephano's background, skills, and limitations may perform. (*Id.* at 114-116.) The VE stated that Stephano's fifteen years of experience as a secretary was transferrable to other, adjacent jobs. (Tr. at 112.) The VE opined that Stephano could not return to her past occupation, but could return to similar light work. (*Id.* at 115.) In the context of her physical and mental limitations coupled with her work experience, the VE believed, based on the totality of the evidence, that Stephano was capable of light work as a receptionist or a general clerk. (*Id.*) The VE estimated that there were roughly 200 suitable receptionist positions and 300 general clerk positions in the local economy. (*Id.*) For the purposes of this assessment, "locally" was defined as being within a seventy-five mile radius of New Castle, Delaware. (Tr. at 116.) The VE was clear, both when questioned by ALJ Benitz, (Tr. at 116), and by Stephano's counsel, (Tr. at 118), that Stephano would be unable to perform her past occupation as a secretary or executive secretary.

---

[3] The court reporter refers to Ms. Ennis Harris as "Annes-Harris" in the administrative hearing transcript based on a phonetic transcription. (Tr. at 91-121.) Ms. Harris's resume summarizes her expert qualifications as a vocational and career specialist. (Tr. at 219-20.)

## C. ALJ Benitz's Findings

ALJ Benitz must complete a five-step evaluation to determine whether a claimant suffers from a disability:

> [The Commissioner] determines first whether an individual is currently engaged in substantial gainful activity. If that individual is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. 20 C.F.R. § 404.1520(b). If an individual is found not to be engaged in substantial gainful activity, the [Commissioner] will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If the [Commissioner] determines that the claimant suffers from a severe impairment, the [Commissioner] will next determine whether the impairment meets or equals a list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations. 20 C.F.R. § 404.1520(d). If the individual meets or equals the list of impairments, the claimant will be found disabled. If he does not, the [Commissioner] must determine if the individual is capable of performing in his past relevant work considering his severe impairment. 20 C.F.R. § 404.1520(e). If the [Commissioner] determines that the individual is not capable of performing his past relevant work, then he must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy. 20 C.F.R. § 404.1520(f).

*West v. Astrue*, C.A. No. 07-158, 2009 WL 2611224, at *5-6 (D. Del. August 26, 2009) (quoting *Brewster v. Heckler*, 786 F.2d 581, 583–84 (3d Cir. 1986)).

On September 27, 2013, ALJ Benitz issued a "Notice of Decision—Unfavorable," confirming the SSA's denial of DIB to Stephano. ALJ Benitz's findings are summarized here:

1. Stephano's date last insured under the Act was December 30, 2008.

2. She did not engage in substantial gainful activity during the period from her alleged onset of disability, January 1, 2008, through December 30, 2008.

3. While impaired by depression and anxiety through the date last insured, as of the date last insured, those impairments were stable and therefore non-severe impairments. 20 C.F.R. § 404.1520(c).

7

4. Through the date last insured, Stephano did not have an impairment or combination of impairments that met the guidelines established in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The plaintiff has the residual functional capacity to perform a range of light work; however, she should not engage in hazardous work, avoid heights, and temperature or humidity extremes.

6. Through the date last insured, Stephano was unable to perform any past relevant work.

7. Stephano meets the 20 C.F.R. 404.1563 definition of a person closely approaching retirement age on the date last insured.

8. Stephano has at least a high school education and can communicate in English.

9. She has acquired work skills from past relevant work.

10. Taken together the record shows that Stephano had acquired work skills that were transferrable to other occupations with jobs in the national economy existing in significant numbers.

11. Stephano was not under a disability, as defined by the Act, from January 1, 2008 through December 30, 2008, her last date insured.

(Tr. at 18-24.)

## III.   STANDARD OF REVIEW

### A. Review of an Agency Decision

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refraining from] weighing the evidence or making credibility determinations." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citation omitted). If the court determines that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

A reviewing court must uphold an ALJ's decision if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The inquiry focuses on whether ALJ Benitz's conclusion was reasonable given the evidence and record. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). "Where [an ALJ's] findings of fact are supported by substantial evidence," the court is "bound by those findings, even if . . . [the court] would have decided the factual issue differently." *Fargonoli v. Massanari*, 247 F.3d 34, 38 (3d. Cir. 2001). In Social Security cases, this substantial evidence standard applies to motions for summary judgment. *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## IV.   DISCUSSION

### A.   ALJ's Weighing of the Evidence from Plaintiff's Treating Physicians

First, Stephano argues that ALJ Benitz committed clear legal error because his analysis did not indicate how much weight he assigned to the medical opinions of Dr. Bryer. (D.I. 13 at 13.) Moreover, Stephano asserts that ALJ Benitz failed to cite to any specific medical facts to support the mental Residual Functional Capacity ("RFC"). Colvin responds that ALJ Benitz explained the reasons why Dr. Bryer's conclusory opinions were not entitled to controlling weight. (D.I. 16 at 16.)

In evaluating the medical evidence, the relevant and controlling time period for establishing disability is the one-year window from the alleged onset, January 1, 2008, through to the date last insured, December 30, 2008. 42 U.S.C. 416(i); *see also Hughes v. Commr. of Soc. Sec.*, 297 Fed. Appx. 123, 126 (3d Cir. 2008) (unpublished) (stating that severe impairment must meet the 12–month duration requirement to satisfy eligibility). The Commissioner's regulations direct that a treating physician's medical opinion be given controlling weight provided that the opinion rests on and is well-supported by acceptable clinical evidence and is not inconsistent with any other

substantial evidence present in the record as a whole.  20 C.F.R § 404.1527(c)(2)-(4).  The Third Circuit has interpreted and applied these regulations directing that "[a]n ALJ should give treating physicians' reports great weight" and requiring "contradictory medical evidence . . . for an ALJ to reject a treating physician's opinion outright." *Brownawell v. Commr. Of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (internal citations omitted).  Even in the presence of contradictory medical evidence, an ALJ may still afford the treating physician opinion some weight based on the extent of supporting explanations. *Id.* (quoting *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999)).

ALJ Benitz determined that Dr. Bryer's evaluation of Stephano's mental condition was not controlling because (1) Dr. Bryer had not treated her at all during the five years preceding the date of alleged onset of disability; (2) during the one-year window under consideration he treated her for only the last six months; (3) upon initiation of treatment Stephano showed immediate improvement; and (4) her worsening mental condition occurred after the date last insured.  (Tr. 22-23; D.I. 13 at 3-8) (summarizing medical facts supporting a worsened condition after the date last insured).  In addition to the above four facts, ALJ Benitz noted that the totality of Stephano's condition during the relevant time period did not meet the criteria enumerated in the Listing of Impairments 12.04, that is, the "paragraph B criteria."  (Tr. at 19.)  The record does not show that Stephano suffered repeated episodes of decompensation during the relevant period, a fact that ALJ Benitz noted in his written opinion. (*Id.*)  In the absence of repeated episodes of decompensation, an applicant must demonstrate marked impairments for at least two of the following: activities of daily living, maintaining social function, maintaining concentration, and persistence or pace. *Listing of Impairments*, Affective Disorders § 12.04.  "Marked impairment" is defined in The Listing of Impairments as "more than moderate but less than extreme." *See also* 20 C.F.R. §§ 404.1520(a), 416.920(a).  When considering the treating physician evaluation in light of the record

10

as a whole, ALJ Benitz identified substantial evidence supporting his decision to reduce the weight of the treating physician's opinion. (Tr. at 19-20.)

The court concludes that ALJ Benitz clearly explained his decision to reduce the weight of Dr. Bryer's assessment  Accordingly, substantial evidence supports ALJ Benitz's analysis of Dr. Bryer's opinion. Because ALJ Benitz's decision is supported by substantial evidence, the court finds that ALJ Benitz did not commit error.

### B.     ALJ's Finding of Stephano's Credibility

Next, Stephano argues that ALJ Benitz did not properly evaluate her credibility. (D.I. 13 at 17.) Colvin responds that ALJ Benitz described Stephano's improvement during the relevant 2008 period and found that the record did not substantiate her complaints of disabling mental impairments. (D.I. 16 at 19)

The Commissioner's rules direct an ALJ to consider a claimant's subjective reports of symptoms, limitations, and other complaints in the context of objective evidence, including medical evidence, work history, treatment history and other factors.  20 C.F.R. § 404.1529(c). There is a two-step analysis for the evaluation of credibility in Social Security benefits cases.  20 C.F.R. § 404.1529.  First, there must be a medically determinable impairment that could produce the symptoms.  *Id.*  Second, the ALJ must consider the credibility of the evidence, in light of: (i) daily activities; (ii) location, duration, frequency, and intensity of symptoms; (iii) precipitating and aggravating factors; (iv) type, dosage, effectiveness, and side effects of medications; (v) treatment other than medication; (vi) other measures used to relieve symptoms; (vii) other functional factors and limits.  *Id.*; *see e.g. Burns v. Barnhart*, 312 F.3d 113, 130–31 (3d Cir. 2002) (holding that an ALJ may reject testimony of subjective complaints if testimony is not consistent with objective evidence); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  Credibility determinations are the province of the ALJ and are

disturbed by reviewing district courts only if those determinations are not supported by substantial evidence. 20 C.F.R. § 404.1527(e); *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983). The inquiry is not whether a reviewing court would make the same determination, but rather, whether the ALJ's conclusion was reasonable and supported by substantial evidence. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988) (further noting that substantial evidence is "more than a mere scintilla ... but ... less than a preponderance).

ALJ Benitz recounted Stephano's subjective complaints stemming from her depression, but found that they were not credible to the extent that they were inconsistent with the RFC. (D.I. 16 at 20.) Specifically, ALJ Benitz pointed out that Stephano reported that her condition had improved in 2008 and therefore concluded that Stephano's condition was not as severe as she claimed. (*Id.*) Because ALJ Benitz's decision is supported by substantial evidence, the court concludes that he did not commit error.

### C. ALJ's Elicitation and Weighting of Vocational Expert Opinion

Stephano alleges that ALJ Benitz inaccurately stated her limitations when framing the hypothetical to ascertain her employability based on her RFC. (D.I. 13 at 18-19.) She argues that ALJ Benitz did not include all of the medically established limitations in his framing hypothetical. In so doing, he failed to elicit a complete and accurate assessment of her RFC and prospects for employment. (*Id.*) Colvin responds that the RFC supplied to the VE by Benitz accurately conveyed Stephano's limitations that were credibly established by the record. (D.I. 16 at 20.)

The Commissioner's rules define the RFC as the claimant's maximal remaining abilities despite any properly established medical or mental impairments. 20 C.F.R. § 404.1545. The RFC is determined by the ALJ based on the totality of the record before the administrative body, including, but not limited to the claimant's testimony, various opinion evidence, and objective

medical evidence. 20 C.F.R. § 404.1545(a). In short, the RFC includes key conclusions made by the ALJ during Social Security DIB administrative litigation. *See generally*, 4 Soc. Sec. Law & Prac. § 52:103. The ALJ articulates the substantiated medical and mental impairments—the factual predicate—that forms the basis of the VE's opinion of potential future employment. The Third Circuit requires that the ALJ "accurately convey to the vocational expert all of a claimant's *credibly established* limitations." *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis added). The "credibly established" qualification is essential. There is no requirement that all alleged limitations be posed to the VE, but rather, only those limitations the ALJ finds are supported by the totality of the record. *Id. Accord Jones v. Barnhart*, 364 F.3d 501, 505-06 (3d Cir. 2004); *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999).

ALJ Benitz framed the occupational hypotheticals for the VE with a list of Stephano's physical limitations and medication side effects.[4] However, he did not include any limitation on memory, concentration, or general cogitative ability. (Tr. 114-115.) The only mental limitation cited for the factual predicate of the VE opinion was "depression of a mild nature [limiting] her to SVP 3 or 4 work." (Tr. 114.) By omitting the other alleged mental impairments, ALJ Benitz signaled that he did not find the other alleged limitations properly supported by the record, particularly given the documented improvement of Stephano's symptoms in 2008. (D.I. 16 at 22.) Further, in his written decision, he specifically notes that the alleged mental impairments either did not surpass the disability threshold or did not occur in the relevant time frame for DIB consideration. (Tr. 19.) ALJ Benitz arrived at his conclusion of Stephano's RFC, then framed the hypotheticals for the VE only with those limitations he found supported by evidence. This shifting

---

[4] Specifically, he enumerated her limitations as (1) a significant risk of dizziness because of a side effect of her medications treating anxiety and depression; (2) lifting and standing limitations due to a knee condition; and (3) limitations to SVP 3 or 4 work due to mild depression. (Tr. 113-115.)

of the record and making findings of fact and law is exactly the role of the ALJ. The court concludes that ALJ Benitz did not commit error.

## V.   CONCLUSION

For the foregoing reasons, the court concludes that ALJ Benitz's denial of DIB is based on substantial evidence. Accordingly, the court will deny Stephano's motion for summary judgment and grant the Commissioner's cross motion for summary judgment.

Dated: March 21, 2016

UNITED STATES DISTRICT JUDGE

14